**A.I. CREDIT CORPORATION, Plaintiff,**

v.

**Steven LIEBMAN, Defendant.**

**No. 91 Civ. 7461 (RPP).**

United States District Court,
S.D. New York.

July 21, 1992.

D'Amato & Lynch by Richard F. Russell, James D. Christo, New York City, for plaintiff.

Stamell, Tabacco & Schager by Earle Giovanello, Alan A. Beaven, Richard Bieder, New York City, for defendant.

## AMENDED OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action for damages alleging default on payments due under four promissory notes. Defendant moves for an order: (1) pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure dismissing this action for lack of personal jurisdiction; (2) pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure dismissing this action for improper venue; and (3) pursuant to 28 U.S.C. § 1404(a) transferring this action to the District of Connecticut. Based on the allegations in the complaint and for the reasons set forth below, Defendant's motion is denied in its entirety.

## BACKGROUND

This action arises from certain investments made by Defendant Steven Liebman, a Connecticut resident, in four limited partnerships. Each limited partnership was syndicated by Colonial Realty Company ("Colonial"), a Connecticut real estate concern. Colonial has since been forced into bankruptcy amidst allegations of fraud, forgery, and embezzlement involving thousands of investors and hundreds of millions of dollars. *See* George Judson, *Investors Say Connecticut Empire Is Fraud,* N.Y. Times, Mar. 9, 1990, at A1, B4.

Plaintiff A.I. Credit Corporation ("AICCO"), a subsidiary of American International Group, is a New Hampshire corporation with its principal place of business in New York City. For its complaint, AICCO alleges the following.

In 1986 and 1987, Liebman purchased interests in four limited partnerships syndicated by Colonial: Colonial Potomac Limited Partnership, Colonial Cheshire II Limited Partnership, Colmark II Limited Partnership, and Colonial Cheshire I Limited Partnership.[1] As part of the purchase price for each limited partnership interest, Liebman signed a "Negotiable Investor Note" ("Note").[2] Payment of principal and interest under each Note was to be made in installments. Under the terms of each Note, a default by the maker in the payment of any installment of principal or interest rendered the whole of the outstanding principal and interest immediately due and payable at the holder's option.

AICCO acquired an interest in each Note for value, in good faith, and without notice of any defects or defenses. Each Note has been duly negotiated to AICCO, and AICCO is a holder in due course of each Note.

After Liebman defaulted in making payments on each Note, AICCO exercised its option to demand payment of the full amount of the principal outstanding plus accrued interest and applicable penalties. Liebman has failed to and refuses to make payment pursuant to AICCO's demand. AICCO therefore seeks judgment, plus interest, costs, disbursements, expenses, and attorneys' fees, in the amount of: $19,835.80 on the Colonial Potomac Note, $48,922.89 on the Colonial Cheshire II Note, $23,979.50 on the Colmark II Note, and $19,089.22 on the Colonial Cheshire I Note.

## DISCUSSION

### I. PERSONAL JURISDICTION

In opposition to Defendant's motion to dismiss on jurisdictional grounds, Plaintiff asserts that Defendant has consented to this Court's jurisdiction with respect to ac-

---

**1.** Colonial Potomac is a Virginia limited partnership, and Colonial Cheshire II, Colmark II, and Colonial Cheshire I are Connecticut limited partnerships.

**2.** Liebman also executed an agreement for the express benefit of each transferee or holder of each Note, and a non-negotiable note providing for the payment of additional interest on the principal amount of each Note.

tions arising out of each Note. The bases for this consent are "Investor Representations," allegedly agreed to by Liebman in connection with his investment in each limited partnership. The Investor Representations each contained the following clause:

The undersigned hereby agrees and consents to the in personam jurisdiction of any court of competent jurisdiction and proper venue within (i) the state in which the Partnership has its principal place of business at the time of any suit, action, or proceeding, and (ii) the state in which the transferee of the Negotiable Investor Note is domiciled or otherwise has its principal place of business at the time of the suit, action or proceeding, arising out of or in connection with the Negotiable Investor Note or the Investment in the Partnership.

Complaint, Exhs. B, D, F, H. Plaintiff argues that because it is the transferee of each Note and because its principal place of business in New York City, Defendant has consented to jurisdiction in the Southern District of New York.

Defendant opposes jurisdiction by consent on the ground that "the forum selection clause in each of the underlying investor notes is indefinite, unreasonable and unenforceable ..." Def.Mem. at 4. Essentially, Defendant advances two arguments: (A) that the clause is too "uncertain" to be enforced, and (B) that the clause is unenforceable because it is tainted by fraud and overreaching.

A. *Uncertainty*

 In support of his first argument, Defendant relies on *Atlas Credit Corp. v. Ezrine,* 25 N.Y.2d 219, 303 N.Y.S.2d 382, 250 N.E.2d 474 (1969). In *Atlas,* the New York Court of Appeals refused to enforce two Pennsylvania judgments obtained pursuant to a cognovit clause [3] in a guarantee agreement. The cognovit clause provided:

in the event of any default hereunder, the undersigned, and each of them hereby empowers any Attorney of any Court

of record within the United States of America, or elsewhere to appear for them, and with or without a declaration filed, confess judgement or judgements against them in favor of Atlas * * * waiving all errors, defects and imperfections, whatsoever of a procedural nature, in the entering of said judgments or any process or proceedings relating thereto.

303 N.Y.S.2d at 384, 250 N.E.2d at 476. The court held that because the judgments were obtained without acknowledgment by the obligor of the facts constituting the underlying liability, and because the obligor himself did not confess judgment but authorized an unknown third-party to do so through warrant, the judgments were unenforceable as repugnant to public policy. 303 N.Y.S.2d at 393, 250 N.E.2d at 482. With regard to the jurisdiction of the court in which the judgments were obtained, the court ruled, "a warrant of attorney which permits entry of judgment by confession anywhere in the world without notice violates due process and deprives the rendering court of jurisdiction." 303 N.Y.S.2d at 392, 250 N.E.2d at 481.

The instant facts are, however, distinguishable from those in *Atlas.* First, the clause at issue here is significantly more restrictive than that in *Atlas.* Defendant did not consent to be sued anywhere in the world, but only in the jurisdiction of the partnership's principal place of business or in the jurisdiction of a transferee's domicile or principal place of business. Second, there is an element of "uncertainty" whenever a forum selection clause identifies a forum by the residency of a party. Plaintiff has not shown that to be "certain" and hence enforceable, a forum selection clause must indicate a specific geographic jurisdiction in which consent to be sued is given. Lastly, the due process concerns at issue in *Atlas* are absent here. AICCO served Liebman with its complaint, and he has not been denied the opportunity to defend this

___

**3.** A "cognovit note" is defined as, "An extraordinary note which authorizes an attorney to confess judgment against person or persons signing it. It is written authority of a debtor and a

direction by him for entry of judgment against him if obligation set forth in note is not paid when due." Black's Law Dictionary 236 (5th ed. 1979).

action.[4] Accordingly, Defendant's reliance on *Atlas* is misplaced, and the forum selection clause is not void for uncertainty.

### B. *Fraud and Overreaching*

■ Defendant also argues that the forum selection clause should not be enforced because his purchase of the limited partnership interests was tainted by fraud and overreaching. The Supreme Court has recognized that forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). Enforcement is unreasonable where the opposing party establishes fraud, undue influence, or overreaching bargaining power with respect to the forum selection clause. *Id.* at 12–13, 92 S.Ct. at 1914–15.

A party may not, however, avoid the effect of a forum selection clause by merely alleging fraud or coercion in the inducement of the contract at issue. Rather, the party must show that "the *inclusion of that clause in the contract was the product of fraud or coercion.*" *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 2457 n. 14, 41 L.Ed.2d 270 (1974) (emphasis in the original). *See also Ritchie v. Carvel Corp.*, 714 F.Supp. 700, 703 (S.D.N.Y.1989) ("A forum selection clause is to be enforced except where the *clause itself* is procured by fraud (emphasis in original)). Here, Defendant merely alleges that he was induced to purchase the limited partnership interests on the basis of fraud and coercion and that his relationship with Colonial was characterized by unequal bargaining power. He does not state that the forum selection clause itself was made a part of the contract by means of fraud or overreaching. Thus, Defendant has failed to show that the forum selection clause is unenforceable as "unreasonable under the circumstances."

---

**4.** The Court notes that to the extent that the holding of *Atlas* was based on a due process violation, it may be of questionable viability in light of *D.H. Overmyer Co., Inc. v. Frick Co.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972)

## II. VENUE

■ Where, as here, jurisdiction is founded only on diversity of citizenship, venue is proper:

> only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced.

28 U.S.C. § 1391(a). As discussed above, Defendant is subject to personal jurisdiction in this district by virtue of his consent. Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(a)(3).

## III. MOTION TO TRANSFER

■ Defendant moves pursuant to 28 U.S.C. § 1404(a) to transfer this action to the District of Connecticut, arguing that transfer would be more convenient for the parties and witnesses to this action. Section 1404(a) provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

On a motion pursuant to this section, the burden falls on the moving party to establish that there should be a change of venue. *Factors, etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979).

Because Plaintiff is located in New York and Defendant is located in Connecticut, transfer of this case would not further the convenience of the parties, but would merely shift the inconvenience from Defendant to Plaintiff. *See Milgrim Thomajan &*

---

(holding that a cognovit clause which provided for judgment without notice or hearing was not unconstitutional per se, because due process rights are subject to waiver).

*Lee, P.C. v. Nycal Corp.,* 775 F.Supp. 117, 122 (S.D.N.Y.1991).

Furthermore, Defendant has not shown that transfer would further the convenience of the witnesses to this action. Defendant specifies numerous Connecticut witnesses who he claims have knowledge of the allegedly fraudulent nature of the underlying transactions. Affidavit of Steven Liebman sworn to on January 24, 1992, ¶ 16; Reply Affidavit of Steven Liebman, sworn to on February 25, 1992, ¶¶ 8–9. Plaintiff, however, lists numerous witnesses, the far majority of whom live or work in or near the Southern District of New York, who would offer testimony regarding Plaintiff's acquisition of the Notes without knowledge of underlying fraud. Affidavit of Corinne McIntosh–Douglas, sworn to on February 7, 1991, ¶¶ 6–8. If Defendant raises the defense of fraud, trial testimony will focus not only on the existence of that fraud, but also on Plaintiff's knowledge of that fraud at the time it acquired the Notes. Therefore, transfer of this action would merely tend to shift the inconvenience from Defendant's witnesses to Plaintiff's witnesses.

Accordingly, Defendant has failed to sustain his burden of proof on this issue, and the motion to transfer is denied.

## CONCLUSION

For the reasons set forth above, Defendant's motion is denied. All counsel are ordered to appear for a pre-trial conference on May 20, 1992 at 9:00 a.m. in courtroom 302.

IT IS SO ORDERED.