Carlos **MIRO GONZALEZ,**
et al., Plaintiffs,

v.

**AVATAR REALTY, INC.,**
et al., Defendants.

No. CIV. 98–2274(JAG).

United States District Court,
D. Puerto Rico.

Nov. 7, 2001.

Ruy V. Diaz–Diaz, San Juan, PR, for Plaintiffs.

Jesus E. Cuza–Abdala, Goldman, Antonetti & Córdova, San Juan, PR, Norman S. Segall, Miami, FL, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Plaintiffs Carlos Miró Gonzalez ("Miró"), Awilda García Parés ("García"), and their Conjugal Partnership (collectively, "plaintiffs"), brought suit against defendant Avatar Realty, Inc. ("Avatar") for breach of contract pursuant to Puerto Rico Law 21, 10 L.P.R.A. § 279 *et seq.*. Jurisdiction is premised on diversity of citizenship, 28 U.S.C. § 1332. Avatar filed a motion to transfer this case to the United States District Court for the Southern District of Florida, on the basis of a forum selection clause contained in a contract signed by Avatar and Miro. The Court finds that the parties agreed to litigate their disputes in Miami, Florida, and therefore grants Avatar's motion.

### FACTUAL BACKGROUND

Plaintiffs are residents of Bayamón, Puerto Rico. Avatar is a corporation organized under the laws of Florida, with its principal place of business in Orlando, Florida. (Docket 1, Complaint at 1.) On November 21, 1995, Miró and Avatar entered into an exclusive franchise sales contract, renewable on a yearly basis, that granted Miró and Trio Real Estate Ser-

vices the exclusive sales representation rights in Puerto Rico for Avatar's real estate products. (*Id.* at 2.) Pursuant to the contract's terms, Miró would conduct marketing efforts, seminars and presentations of Avatar's products, in order to secure business from Puerto Rico clients. The parties renewed their contract in 1996 and 1997. (*Id.* at 2–3.)

On December 23, 1997, Avatar informed Miró that it would cancel the contract. (*Id.* at 3.) Miró contends that the cancellation violated the Puerto Rico Sales Representative Act, 10 L.P.R.A. § 279 *et seq.* (*Id.*) He claims Avatar did not send him the commissions he earned for pending sales before Avatar cancelled the contract. Miró seeks $800,000.00 in damages. (*Id.*)

Avatar filed a motion pursuant to 28 U.S.C. § 1404(a)[1] to transfer venue to the U.S. District Court for the Southern District of Florida, based on the forum selection clause contained in the Agreement. (Docket 2 at 2.) The forum selection clause reads as follows:

> Florida Contract: This Agreement shall be governed by the laws of Florida. In the event of any litigation upon any of the terms hereof, the parties agree to submit themselves and the subject matter to the jurisdiction of the State and/or Federal Court of Florida **and any action shall be maintained in Miami, Florida.** Consent to such jurisdiction is hereby given by the parties hereto. The prevailing party in any legal proceeding shall be entitled to costs, expenses and reasonable attorney's fees, at both trial and appellate levels. (Emphasis supplied.)

Avatar contends that the parties freely negotiated and agreed to the contract's terms, including the forum selection clause. Since the clause is valid, Avatar argues that the Court should enforce it absent a showing that doing so would be unreasonable and unjust. (Docket 2 at 3).

Plaintiffs argue that the forum selection clause is not dispositive of the matter, and contend that the Court must consider other factors, such as inconvenience to parties and non-party witnesses and availability of documentary evidence, when deciding the transfer issue. (Docket 7 at 3–6). Additionally, plaintiffs contend that the Court should consider Puerto Rico's strong public policy interest in protecting sales representatives as evidenced by Law 21.

### DISCUSSION

Given the similarity between federal law and Puerto Rico law concerning enforcement of forum selection clauses, this Court shall apply federal common law when interpreting the forum selection clause at issue in this case. *See Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 387 n. 1 (1st Cir.2001); *Triangle Trading Co. Inc. v. Robroy Industries, Inc.*, 952 F.Supp. 75, 78–80 (D.P.R.1997); *Stereo Gema, Inc. v. Magnadyne Corp.*, 941 F.Supp. 271, 273 (D.P.R.1996); *Caribe BMW v. Bayerische Motoren Werke*, 821 F.Supp. 802, 815–16 (D.P.R.1993).

Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *Silva*, 239 F.3d at 386 (*quoting M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). A forum selection clause "must be enforced unless (1) it was not freely negotiated or was the result of over-

---

1. Section § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district where it might have been brought."

weening bargaining power or fraud, (2) it contravenes a strong public policy of the forum where the suit is brought, or (3) the party challenging its enforceability shows 'that trial in contractual forum will be so gravely difficult and inconvenient that [it] will, for all practical purposes, be deprived of its day in court.'" *Bristol Babcock v. Puerto Rico Elec. Power Auth.*, 930 F.Supp. 710, 711 (D.P.R.1996). (*quoting M/S Bremen*, 407 U.S. at 18, 92 S.Ct. 1907).

■ Generally, the party seeking transfer bears the burden of proof and "there is a strong presumption in favor of the plaintiff's choice of forum." *Coady*, 223 F.3d at 11; *see Sigros v. Walt Disney World Co.*, 129 F.Supp.2d 56, 71 (D.Mass. 2001); *Bristol Babcock*, 930 F.Supp. at 711. When parties agree to a forum selection clause, however, it is the resisting party who must show the unreasonableness of enforcement under the circumstances. *M/S Bremen*, 407 U.S. at 10, 92 S.Ct. 1907. Additionally, when ruling on a motion for transfer under § 1404, a district court must consider "the convenience to parties and witnesses," and may consider other factors such as "availability of documents." *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir.2000). *See Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7 (1st Cir.1987).

Plaintiffs contend that the First Circuit's decision in *Autoridad de Energia Eléctrica v. Ericsson, Inc.*, 201 F.3d 15 (1st Cir. 2000), should guide the Court's analysis. The *Ericsson* Court held that an affirmative conferral of personal jurisdiction in forum selection clauses does not preclude jurisdiction in other potentially appropriate forums. *Id.* at 18–19. The forum selection clause at issue in *Ericsson* stated: "... the parties agree to submit to the jurisdiction of the courts of the Commonwealth of Puerto Rico." *Id.* at 18. The

Court held that the contractual language was "a consent to personal jurisdiction in the Puerto Rico courts" and not a "negative exclusion of jurisdiction in other courts." *Id.* at 18. Since the language in Miró–Avatar contract contains similar language ("... the parties agree to submit themselves and the subject matter to the jurisdiction of the State and/or Federal Court of Florida..."), Miró argues that a similar result should obtain.

The recent First Circuit decision in *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 386 (1st Cir.2001), however, suggests otherwise. In *Silva*, the First Circuit expanded on its holding in *Ericsson*, and stated that *Ericsson* "did not create a general rule for forum selection clauses." *Silva*, 239 F.3d at 388. The forum selection clause at issue in *Silva* stated that "all actions involving this agreement must be brought in the State of Illinois." *Id.* at 386. The Court held that the word "must" expressed "the parties' intention to make the courts of Illinois the exclusive forum for disputes arising under the contract." *Id.* at 388–389. Since the clause was mandatory, the Court ruled that it would enforce it absent exceptional circumstances that would make it unjust or unreasonable to do so.

■ Here, the forum selection clause in the parties' agreement contains mandatory language similar to the language in the *Silva* case. The agreement between Miro and Avatar states that "any action **shall** be maintained in Miami, Florida." (Emphasis supplied.) The words "shall" and "must" are mandatory terms that express the parties' clear intention to litigate any disputes in the mutually agreed-upon forum—here, Miami, Florida. Therefore, the Court will enforce the forum selection clause absent exceptional circumstances that would render such enforcement unreasonable or unjust.

The Court does not consider that enforcing the forum selection clause would be unreasonable or unjust. Generally, courts should enforce forum selection clauses unless: (1) they were not freely negotiated; (2) they contravene strong public policy, or (3) the parties would be inconvenienced to the extent of being deprived of their day in court. *See Bristol Babcock*, 930 F.Supp. at 711. Miró has not shown that his situation falls under any of these exceptions.

### (1) *The contract was freely negotiated.*

Miró does not seriously dispute that he freely chose to sign the Avatar contract. He does not appear to have complained about the forum selection clause at any time before or after signing. He has not proffered any evidence that could lead the Court to conclude otherwise. Therefore, the Court must uphold the parties' intention "as manifested through their freely-negotiated choice of forum agreements." *Bristol Babcock*, 930 F.Supp. at 711.

### (2) *The clause does not contravene Puerto Rico's public policy.*

■■■ There is no conflict between federal common law and Puerto Rico Law concerning enforcement of forum selection clauses. *See Silva*, 239 F.3d at 387 n. 1; *Unisys v. Ramallo Bros.*, 128 D.P.R. 842, 855–57, 1991 WL 735351 (1991). In *Triangle Trading*, 952 F.Supp. at 81, this District Court (Casellas, J.) held that Law 21

does not directly proscribe forum selection clauses. The contract at issue here is governed by Law 21. The enforcement of a freely-negotiated forum selection clause would not contravene Puerto Rico's strong public policy interests.

### (3) *Plaintiffs will not be deprived of their day in court.*

Any possible inconvenience to litigating in Miami, Florida was foreseeable to the parties when they negotiated and agreed on the contents for the forum selection clause. If plaintiffs had not wanted to have Miami, Florida be the forum to litigate their disputes with Avatar, they should have expressed their opposition before signing the contract. By like token, since plaintiffs agreed to litigate in Miami, Florida, they knew that, in the event of a dispute, they would be required to produce documents and party witnesses in Miami. As to the availability of non-party witnesses who may not be within the reach of the Florida district court's subpoena power,[2] the federal rules provide a mechanism that allows the litigation to continue its course in accordance with the parties' intent as expressed in the contract.

Although the convenience of witnesses is an important factor, the Court must "weigh all of the factors identified in § 1404(a), giving carful consideration to a forum selection clause where one is present." *Home Prods. Int'l v. PeopleSoft*

---

**2.** Miró alleges inconvenience because the non-party witnesses he has identified reside in Puerto Rico and not in Miami, Florida, and because the documentary evidence (namely, files in a Bayamón office and documents at the Commonwealth's Department of Consumer Affairs) is located in Puerto Rico. Avatar, in turn, states all of its non-party witnesses and documents are located in Miami. (Docket 9 at 7.) Miró identifies eight possible witnesses: Julio Gil de la Madrid, owner of Trio Realty, Inc., who will testify about Avatar's relationship with Miró; Joaquin Torres, Joanna Iri-

zarry, Anthony Santiago, Carlos Nieves, Idania Borrero and Pedro Sálamo Ayala; will testify about the seminars and presentations Miró carried out; and the Branch Manager of Banco Popular of Bayamon Center, who will testify about Miró's business bank accounts. (Docket 7, Exhibit 1.) At this time, Avatar does not contest Miró's efforts or business accounts, therefore, it does not know if these witness will ever be called to testify. If in fact they were to be called, Miró can depose them in Puerto Rico and use their testimony in Miami. *See* Fed.R.Civ.P. 45.

*USA, Inc.,* 201 F.R.D. 42, 49–50 (D.Mass. 2001) (stating that inconvenience to witnesses "should be weighed against clear terms of a forum selection clause"). In light of the contract's forum selection clause and absent overwhelming proof of inconvenience, the Court will grant the motion for transfer.

Avatar offered Miró the opportunity to enter into an exclusive agreement, and Miró agreed. Not only did Miró agree, but he also renewed the contract twice, 1996 and 1997, without protest. No evidence suggests that he was coerced into signing the agreement. "All that remains, then, is an arms-length transaction, the terms of which are biding on the parties." *Silva,* 239 F.3d at 389. The enforcement of the contract's terms is not unreasonable.

## CONCLUSION

In light of the foregoing, the Court grants defendant's Motion for Transfer of Venue to the United States District Court for the Southern District of Florida.

IT IS SO ORDERED.